IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAG DS CORP. dba MAG AEROSPACE, | § § § | |
| Plaintiff/Counterclaim Defendant, | § § § | |
| v. | § § | |
| KING AEROSPACE COMMERCIAL CORPORATION, INC., | § § § § | CAUSE NO. 3:19-CV-01378-E |
| Defendant/Third-Party Plaintiff, | § § § | |
| v. | § § | |
| MTS GROUND SUPPORT EQUIPMENT, INC., | § § § § | |
| Third-Party Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant King Aerospace Commercial Corporation, Inc.'s Motion for Partial Summary Judgment (Doc. 84). After careful consideration of the motion, Plaintiff's response, and the reply, as well as the record and applicable law, the Court grants the motion in part and denies it in part.

*Background*

As alleged in its live pleading, Plaintiff MAG DS Corporation d/b/a MAG Aerospace provides specialty aviation services to various agencies of the federal government. In 2018, the U.S. Marshals Service awarded MAG a contract related to the Justice Prisoner and Alien Transportation System (JPATS). JPATS transports sentenced prisoners in the custody of the Federal Bureau of Prisons to court appearances and detention facilities. Pursuant to the contract,

MAG would lease a 2000 Boeing 737-700 Aircraft to JPATS. The lease required MAG to obtain a valid Standard Certificate of Airworthiness for the Aircraft from the FAA. To obtain the certificate, certain modifications needed to be made to the Aircraft including the installation of a FANS-1/A+ Aircraft Data Link System (FANS), which provides real-time position updates and enhanced communication between pilots and air traffic control, and the installation of upgraded flight management computer software (FMC Software).

MAG engaged King Aerospace Commercial Corporation (KACC), an aviation maintenance provider, to make the needed modifications. On April 13, 2018, MAG and KACC entered into an Aircraft Modification Agreement (AMA) by which KACC agreed to perform detailed inspections, equipment certifications, airworthiness directives, service bulletins, maintenance, modifications, and corrective actions on the Aircraft in accordance with certain maintenance manuals and FAA regulations. Further, the AMA required KACC to return the Aircraft to MAG by May 30, 2018, with all work complete. MAG and KACC later entered into four other AMAs for additional maintenance work on the Aircraft.

MAG's complaints in this lawsuit generally involve three different problems that allegedly arose in completing the Aircraft modifications: (1) engine damage caused by KACC's failure to properly secure an engine prior to transit, (2) KACC's failure to provide a FANS that satisfied lease requirements, and (3) KACC's failure to provide required FMC Software.

First, MAG alleges KACC negligently damaged one of the Aircraft's engines. After the Aircraft was delivered to KACC's facility in Ardmore, Oklahoma, MAG hired Aircraft Inspection & Management, LLC (AIM) to remove and replace the booster spool on one of the engines. Work on the booster spool was to be performed at AIM's facility in Tucson, Arizona. MAG instructed KACC to remove the engine in question and properly secure it in a cradle for transport from

Oklahoma to Arizona. KACC removed the engine from the Aircraft, mounted it in a cradle KACC had modified, and placed the cradle on a truck for transport. While in transit to Arizona, the engine fell from the cradle. When the engine arrived at AIM's facility, AIM discovered extensive damage to the engine and its component parts, including the gearbox. AIM recommended additional testing and repair and replacement of damaged components. KACC agreed to pay for required inspections of the engine and any damage caused by the engine drop and executed a purchase order with AIM to repair the engine. MAG alleges that various actions or inactions by KACC delayed the repair process. For example, KACC allegedly delayed shipping the gearbox to the inspection vendor and delayed reinstalling the gearbox. MAG alleges the damage caused to the engine by KACC's negligence negatively affected the airworthiness of the Aircraft and caused MAG to incur repair costs and lost lease payments.

MAG also complains about KACC's installation of FANS. After the initial AMA, MAG contacted KACC to discuss adding FANS to the work to be done. KACC suggested a standalone system with FANS capability and represented such a system would satisfy all FAA and lease requirements. MAG accepted KACC's proposal for FANS installation. KACC completed the FANS installation, but a consultant retained by JPATS identified material discrepancies in the installation and documentation. In October 2018, JPATS notified MAG of deficiencies in the Aircraft, including the lack of a FANS that satisfied the lease requirements. JPATS demanded a plan for remedying the deficiencies. MAG attempted to salvage the lease, but KACC's misrepresentations and breach of the AMA allegedly prevented MAG from timely delivering an airworthy Aircraft to JPATS. JPATS terminated the lease for cause, noting that the FANS installation lacked capabilities and approvals that made it "virtually impossible" to determine whether the Aircraft would ever be airworthy. Also, JPATS noted the FANS did not have a valid

Supplemental Type Certificate (STC), issued by the FAA, and asked MAG to provide one as required by the lease. MAG met with JPATS and offered concessions in an attempt to reverse the termination. In May 2019, MAG developed a certification plan for the FANS in conjunction with JPATS. MAG contracted with a new vendor to accomplish the work on the FANS. JPATS agreed to conditionally reinstate the lease.

Third, MAG contends KACC did not provide contracted-for software for the Aircraft. When initially discussing the work required with KACC, MAG expressed to KACC a need to upgrade the Aircraft's existing FMC Software to a newer version. A crucial part of the FMC Software, the Aircraft's delivery database, was missing, and MAG asked KACC to source the delivery data. MAG alleges KACC failed to do so and failed to load upgraded FMC Software.

MAG asserts claims against KACC for breach of contract, negligence, gross negligence, fraudulent inducement, and negligent misrepresentation. KACC seeks summary judgment on MAG's four tort claims. KACC argues MAG's negligence, gross negligence, and negligent misrepresentation claims are barred by the economic loss rule and argues that MAG does not have a valid fraudulent inducement claim because it cannot establish KACC's alleged misrepresentations were made knowingly or recklessly. With respect to the breach-of-contract-claim, KACC argues that under the terms of the AMAs, it is entitled to summary judgment on MAG's attempt to recover lost profits damages. Finally, KACC contends it is entitled to summary judgment on MAG's claim for exemplary damages because they are not recoverable for breach of contract, MAG's only viable cause of action.

To be entitled to summary judgment, a party must show there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Jones v. U.S.*, 936 F.3d 318, 321 (5th Cir. 2019). In deciding whether a dispute of material fact exists, the

Court views the facts and draws reasonable inferences in the light most favorable to the nonmoving party. *Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 408–09 (5th Cir. 2017).

*Negligent Misrepresentation*

First, the Court addresses MAG's negligent misrepresentation claim. In its brief in response to the motion for summary judgment, MAG argues the economic loss rule does not bar its negligence and gross negligence claims. It does not make any argument regarding the propriety of summary judgment as to its negligent misrepresentation claim and, in a footnote, states its intention to seek leave to amend its complaint to eliminate that claim. MAG did seek leave to amend its complaint to eliminate the negligent misrepresentation claim, among other amendments. The Court denied leave to amend, finding MAG had not shown good cause for modification of the scheduling order. As MAG has in effect conceded its negligent misrepresentation claim, the Court grants KACC's motion for summary judgment with respect to the negligent misrepresentation claim.

*Economic Loss Rule — Negligence and Gross Negligence*

The Court turns to the issue of whether the economic loss rule bars two of MAG's other tort claims, those for negligence and gross negligence. MAG's negligence-based claims involve the damage to the Aircraft engine while in transit. MAG alleges KACC owed it a duty to safeguard the Aircraft and its components. MAG alleges KACC was negligent in failing to: (1) obtain and utilize an appropriate cradle for the engine, (2) properly secure the engine to the cradle, (3) properly secure the engine and cradle to the truck for delivery, and (4) prevent the engine from falling during transit. MAG alleges that as a result of KACC's negligence, it incurred significant additional costs to repair the engine and its component parts.

Parties may be barred from recovering in negligence for purely economic losses. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011). This is often referred to as "the economic loss rule." *Id.* "[T]here is not, however, one economic loss rule broadly applicable throughout the field of torts, but rather several more limited rules that govern recovery of economic losses in selected areas of law. *Id.* (quoting Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66. WASH & LEE L. REV. 523, 534–35 (2009)). Thus, the rule is not generally applicable in every situation; it allows recovery of economic damages in tort, or not, according to its underlying principles. *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235–36 (Tex. 2014).

Contractual relationships may create duties under both contract and tort law. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). In determining whether the plaintiff may recover on a tort theory, it is instructive to examine the nature of the plaintiff's loss. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). The nature of the injury most often determines which duty or duties are breached. *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 293 (5th Cir. 2016). When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract. *Southwestern Bell*, 809 S.W.2d at 404; *see Shakeri*, 816 F.3d at 293 (while security company had contractual duty to provide maintenance and repair of alarm system, negligence claim that alleged physical injuries as result of robbery was not defeated by existence of contract). "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015) (quoting *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)).

KACC asserts the economic loss rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence. KACC contends MAG seeks to recover purely economic losses, arguing the only damages MAG has identified are additional costs to repair the engine and its component parts. KACC asserts these costs are considered economic loss.

MAG responds that the economic loss rule does not apply because the source of the duty KACC breached with regard to the engine existed independent of the contract and because the claimed damages are not part of the subject matter of the contract. It argues KACC undertook actions independent of the contract and failed to perform those actions in accordance with the general duty of reasonable care and industry standards. MAG argues the language of the AMAs does not contemplate KACC removing the engine, and damage to the removed engine is the basis for the negligence claims. In addition, MAG argues its injury was independent of the subject matter of the contract.

The Court concludes the economic loss rule bars MAG's negligence and gross negligence claims. MAG alleges that as a result of KACC's negligence it incurred significant additional costs to repair the engine and its component parts. MAG's only loss was to part of the Aircraft, the subject matter of the contract, and MAG seeks to recover purely economic losses. *See Trans–Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 694–95 (Tex. App.—Eastland 2002, no pet.) (where plaintiff alleged defendants negligently repaired aircraft's fuel tanks by using wrong type of sealant and plaintiff sought only to be reimbursed for costs associated with replacement, as tanks did not injure any person or property, economic loss rule barred negligence claims); *see also BCR Aviation, LLC v. Tex. Gyro, Inc.*, No. 3:18-CV-2899-S, 2019 WL 2437034,

at *1–2 (N.D. Tex. June 11, 2019) (after certain problems with aircraft's equipment were discovered, purchaser of aircraft sued company that installed equipment for negligence, but claim was barred by economic loss rule where damages alleged were contractual in nature).

The Court is not persuaded by MAG's argument that the damage to the engine amounts to damage to other property, as opposed to property that is the subject of the contract. Although the parties' AMAs did not call for work on the Aircraft engine, the AMAs contemplated the possibility of the Aircraft being damaged while in KACC's possession for modification. Under the initial AMA between the parties, dated April 13, 2018, "the Work" to be performed is described in Exhibit 1, which is attached and "made a part of this Agreement." Exhibit 1 is titled, "MAG AEROSPACE MAINTENANCE PROPOSAL." In a section about Aircraft ground and flight insurance, the proposal provides that KACC maintains sufficient product liability and aircraft hangar insurance for the duration of the maintenance process. "KACC is responsible for any damage (other than acts of nature) that may occur to the Aircraft during the project. If any damage occurs, it will be repaired or replaced at no charge to the Customer." The damage that occurred to the Aircraft engine occurred to the subject matter of the contract and the economic loss rule bar MAG's negligence claims. Accordingly, the Court grants summary judgment in favor of KACC on the claims for negligence and gross negligence.

*Fraudulent Inducement*

Next, KACC contends it is entitled to summary judgment on MAG's fraudulent inducement claim. This claim involves the FANS. MAG alleges KACC made material representations to it that its proposed FANS would meet the JPATS Statement of Work and satisfy all FAA and lease requirements. MAG alleges KACC's representations were false and KACC knew they were false, or made them recklessly, as positive assertions, without knowledge of their

8

truth. KACC contends MAG cannot establish by clear and convincing evidence that any misrepresentations were made knowingly or recklessly. KACC argues undisputed testimony conclusively establishes that KACC believed the assertions made in its proposal for the Aircraft were correct at the time it made them. MAG responds that fact issues exist regarding whether KACC knew the falsity of its statements about the FANS system or made them recklessly without any knowledge as to their truth. Each side points to summary judgment evidence in support of its position. Taking all evidence and reasonable inferences in the light most favorable to MAG, the nonmovant, and resolving all disputes in MAG's favor, the Court concludes genuine issues of material fact exist on the fraudulent inducement claim; therefore, summary judgment as a matter of law is not appropriate and KACC's motion is denied with respect to this claim.

*Breach of Contract – Lost Profits Damages*

Next, KACC contends it is entitled to summary judgment on MAG's claim for lost profits in connection with its breach of contract claim. MAG's amended complaint alleges that KACC breached the AMA by failing to: (1) complete the maintenance work and return the Aircraft to MAG by May 30, 2018; (2) provide an airworthy Aircraft after FANS installation and award of STC; (3) install and deliver functional FMC Software by January 7, 2019; and (4) satisfactorily complete the maintenance work. MAG alleges KACC's breaches caused MAG to breach the lease with JPATS and resulted in the for-cause termination of the lease by JPATS. Among the damages MAG contends it suffered as a result of KACC's breaches is a claim for lost revenue that MAG would have earned under the lease.

Generally, the measure of damages for breach of contract is that which restores the injured party to the economic position it would have enjoyed if the contract had been performed. *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied). This measure

may include reasonably certain lost profits, i.e., damages for the loss of net income to a business. *Id.* Lost profits may be in the form of direct damages, that is profits lost on the contract itself, or in the form of consequential damages, such as profits lost on other contracts or relationships resulting from the breach. *Id.*

KACC asserts it is entitled to summary judgment because, under the AMAs, MAG is barred from recovering lost profits. KACC relies on the language in bold in the following provision of the AMAs, found in paragraph 10, titled "Warranties," subsection (e):

> THE PROVISIONS OF THIS PARAGRAPH 10 CONSITUTES KACC'S ONLY WARRANTY WITH RESPECT TO WORK, AND THIS WARRANTY IS ACCEPTED BY OWNER IN LIEU OF ALL OTHER WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WHETHER WRITTEN, ORAL, EXPRESS, IMPLIED, OR STATUTORY, AND OF ANY OTHER OBLIGATION ON THE PART OF KACC. KACC NEITHER ASSUMES NOR AUTHORIZES ANY PERSON [TO] ASSUME FOR IT ANY OTHER LIABILITES WITH RESPECT TO THE WORK. **KACC SHALL NOT BE LIABLE FOR NORMAL WEAR AND TEAR OR FOR ANY CONTINGENT, INCIDENTAL, OR CONSEQUENTIAL DAMAGE OR EXPENSE DUE TO PARTIAL OR COMPLETE INOPERABILITY OF THE WORK FOR ANY REASON WHATSOVER.**

(Emphasis added.) KACC argues MAG's lost profits are consequential damages as a matter of law and are not recoverable under this provision.

MAG responds that its claim for lost profits survives summary judgment for three reasons. First, the plain language of paragraph 10(e) disclaims consequential damages for breach of warranty claims, not breach of contract claims. According to MAG, KACC ignores the context in which the limitation if found. Second, MAG argues that, at a minimum, the contractual limitation on consequential damages is ambiguous and should be resolved in favor of MAG. Third, MAG argues some of the damages KACC attempts to characterize as consequential damages are in fact direct damages.

Texas law applies in interpreting the AMAs on this issue. The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). A contract's plain language controls, not what one side or the other alleges they intended to say but did not. *Id.* The Court assigns terms their ordinary and generally accepted meaning unless the contract directs otherwise. *Id.* If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law. *Id.* An ambiguity does not arise merely because a party offers an alternative conflicting interpretation, but only when the contract is actually susceptible to two or more reasonable interpretations. *Id.*

The Court agrees with MAG that the prohibition on consequential damages is limited to claims for breach of warranty. The provision is located in a section about "Warranties" and the first sentence of the paragraph states that the section constitutes KACC's only warranty with respect to its work. And it is significant that the paragraph's prohibition on consequential damages is tied to those damages resulting from "partial or complete inoperability of the work." In light of the context in which the language about consequential damages occurs, the Court finds unpersuasive KACC's argument that the language in this paragraph was meant to limit the available damages arising out of the contract as a whole.

Even if the relevant provision limiting consequential damages applies to a breach of contract, KACC is still not entitled to summary judgment on this issue. Under the plain language of the parties' contract, consequential damages are not allowed *when* they result from partial or complete inoperability of the work. At least some of the breaches MAG has alleged do not involve inoperability of the work. For example, MAG alleges delays on the part of KACC in performing

11

the work and contends KACC breached the contract by failing to timely return the Aircraft to it. KACC has not shown that it is entitled to summary judgment on MAG's claim for lost profits.

*Exemplary Damages*

Finally, KACC contends it is entitled to summary judgment on MAG's claim for exemplary damages. In light of its position that MAG does not have any viable tort claims, KACC argues exemplary damages are not available for MAG's only viable claim, breach of contract. As the Court has not granted summary judgment for KACC on all MAG's tort claims, this argument fails. KACC also argues briefly that MAG cannot produce clear and convincing evidence of fraudulent inducement that could give rise to an exemplary damage award. The Court concludes genuine issues of material fact exist regarding exemplary damages on the fraudulent inducement claim and summary judgment is not appropriate on MAG's exemplary damage claim.

In summary, the Court grants KACC's motion for partial summary judgment in part and denies it in part. The Court grants summary judgment for KACC on MAG's claims for negligent misrepresentation, negligence, and gross negligence. In all other respects, the motion is denied.

**SO ORDERED.**

SIGNED this 3rd day of June, 2021.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE